UNITED STATES *v.* P. JOHN HANRAHAN, INC., TRANS., WM. BERNSTEIN Co., INC. (No. 4934) [1]

[1] C. A. D. 684.

United States Court of Customs and Patent Appeals, June 18, 1958

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Joseph Schwartz* of counsel) for appellee.

*Eugene R. Pickrell, amicus curiae.*

[Oral argument April 10, 1958, by Mr. Sklaroff and Mr. Honey]

Before JOHNSON, Chief Judge, and WORLEY, and RICH, Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division (C. D. 1900) sustaining a protest by the importer and holding the merchandise involved, invoiced as "wheat gum gluten," to be dutiable at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, as a manufactured article not specially provided for. The collector classified the merchandise under the same paragraph, but held it to be dutiable at 20 per centum ad valorem on the ground that it was an edible preparation for human consumption and hence not entitled to the reduction of duty provided for in the Torquay Protocol. The pertinent provisions are as follows:

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on *all articles manufactured, in whole or in part, not specially provided for*, a duty of 20 per centum ad valorem. (Emphasis added.)

Paragraph 1558, as modified:

Articles manufactured, in whole or in part, not specially provided for (except the following: coconut shell char; dog food; marine glue pitch; synthetic rubber and synthetic rubber articles; tall oil or liquid rosin; textile grasses or fibrous vegetable substances; *and edible preparations for human consumption other than yeast*)_____10% ad val. (Emphasis added.)

The testimony of record shows that the merchandise is known as vitalized wheat gluten or gum gluten and that it is prepared from wheat flour by removing the starch and drying and powdering the residue. It cannot, as a practical matter, be eaten by itself but it is commonly added to wheat flour to produce a high protein mixture which is used in making bread and other foods for dietary purposes.

The questions presented are (1) whether the merchandise is a preparation, and (2) whether it is edible for human consumption. The Customs Court held that it is a preparation but is not edible within the meaning of the applicable provision of the Torquay Protocol.

The Customs Court, in the course of holding that the instant importation is a "preparation," used language indicating that it would be sufficient to constitute it a "preparation" if "it has been purposely started on its way toward adaptation to a particular use." Appellee argues that if we were to accept such an interpretation of the word "preparation," the word would be redundant in its present context in paragraph 1558 as modified. Appellee states:

* * * The words "edible preparations" appear under the provisions of Par. 1558 for "articles manufactured in whole or in part, not specially provided for." It is difficult to conceive of any edible article which would not be advanced toward its ultimate use by the application of a manufacturing process. Therefore, any manufacturing process applied to an edible article would make the article a preparation as that term is interpreted by the Court below. If the negotiators of the Torquay Protocol had considered that the basic manufacturing process required to obtain the article itself rendered the article a preparation, the word "preparations" would be without significance since *all edible articles* would be preparations. * * * (Emphasis quoted.)

It is not necessary for us to answer appellee's argument on this point for the facts of this case do not require the delineation of the lower limits of the "preparation" provision. Whatever those limits may be, we are convinced that in a case such as this, where the imported merchandise is a distinct and recognized article of commerce, having an individual name, and which is produced from a raw material by a definite series of steps, said merchandise is a preparation. The process by which the wheat gum gluten is made is not merely a removal of impurities, but is analogous to the separation of menthol from the peppermint plant, involved in *McKesson & Robbins* v. *United States*, 3 Ct. Cust. Appls. 515, T. D. 33167, or the separation of scammony resin from scammony root in *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T. D. 41706. The products resulting from those processes were held to be preparations, and the reasoning employed in the cited decisions is likewise applicable to the instant merchandise. As was also held in the cited decisions, the fact that a commodity is not used alone, but in combination with other substances, does not preclude its being classified as a preparation.

The determination as to whether the instant merchandise is edible, within the meaning of the applicable provision of the Torquay Protocol, depends upon whether that word, as there used, embraces all preparations which may ultimately be consumed in foods, or is limited to those which may be eaten in the form in which they are imported.

It is not contended that the word "edible" has a commercial meaning differing from its common meaning which, as defined by

Webster's New International Dictionary (1932 ed.), is "Fit to be eaten as food; eatable; esculent; as *edible* fishes." As thus defined, and as generally understood, "edible" is not limited to things which may be eaten alone and without preparation. Fish are not eaten in that manner, and yet the quoted definition expressly refers to edible fish.

In *United States* v. *Paul Puttmann*, 21 C. C. P. A. (Customs) 135, T. D. 46466, this court considered the term "edible gelatin" and held it to be applicable to gelatin which was customarily used in making photographic film, but which could also be used with other ingredients in making food. It did not appear that such gelatin was ever eaten alone in the form in which it was imported. While the specific issue here involved was not discussed in that decision, it is implicit in the conclusion there reached that a substance is edible if it is commonly eaten as an ingredient of foods, even though it is not eaten alone.

Appellees contend that judicial notice may be taken of the fact that gelatin "can be and is consumed by itself after mixing with water." This appears to be a contradiction in terms, since the gelatin is no longer by itself after it has been mixed with water. There is nothing in the *Puttmann* case to indicate that the gelatin was ever eaten in its condition as imported, and the holding that it was edible clearly was not based on the possibility of eating it in that condition, but on its ultimate use as an ingredient of food.

The Customs Court cited the decisions in *In re Cruikshank*, 54 Fed. 676 (C. C. S. D. N. Y. 1893), and *Cruikshank* v. *United States*, 59 Fed. 446 (2d Cir. 1894). The former decision held certain spices to be edible, but that holding was reversed in the latter decision. Both decisions, however, turned on the fact that spices are normally incorporated in foods for flavoring, rather than for nourishment. The lower court concluded from that fact that the term "edible spices" must refer to spices which were used for flavoring, since it did not appear that spices were eaten in any other way; while the appellate court found that since all spices are edible as flavoring it would be "absurd" to hold that the word "edible" was used in that sense in the paragraph under consideration. Those decisions, therefore, are based on a specific set of facts and are not in point on the broader language ("edible preparations") here under consideration. For a decision of a circuit court consistent with our decision, see *Boak* v. *United States*, 125 Fed. 599 (7th Cir. 1903), wherein berries, which could be eaten only after boiling, were held to be "edible."

The Customs Court also relied on *United States* v. *Yick Shew Tong Co.*, 25 C. C. P. A. (Customs) 255, T. D. 49392. That case, however, so far as relevant here, merely holds that the word "edible" is limited to things which are habitually eaten by man or specifically fit to be

eaten. It has no bearing on the question as to whether a product, in order to be edible, must be capable of being eaten alone or without modification. The instant merchandise is habitually eaten as an ingredient of such foods as bread, and therefore satisfies the definition of "edible" set forth in the *Yick Shew Tong Co.* decision.

In reaching the conclusion that the merchandise is not edible, the Customs Court seems to have been influenced by the fact that the applicable portion of the Torquay Protocol refers to "edible preparations for human consumption other than yeast." The court devoted a considerable portion of its opinion to a discussion of yeast, its uses and properties, and apparently felt that because yeast was excluded by name in the above-quoted expression, it followed that the edible preparations not specifically mentioned must be similar to yeast, at least to the extent of being sometimes eaten alone. In our opinion, however, the quoted language establishes only that yeast is to be regarded as an edible preparation. The mere exclusion of yeast from the "edible preparations" does not in any way modify the meaning of that term, nor does it evidence any intention to construe the term in other than the ordinary manner.

We find no reason for applying to the word "edible," as here under consideration, any meaning other than its common one which, in our opinion, embraces a preparation such as the instant merchandise, which is commonly used as an ingredient of foods and is prepared for that purpose. It is not necessary that the preparation should normally be eaten in the condition in which it is imported. It is, of course, true, as urged by appellee, that classification must be determined on the basis of the condition of the merchandise at the time of importation, but the instant merchandise, as imported, is capable of being eaten, and therefore is edible even though it must be mixed with other ingredients and cooked before the actual eating takes place.

Appellee argues that clauses such as that here under consideration, which make exceptions to the general provisions of a statute, must be strictly construed. We are of the opinion however that, even under a strict construction, the instant merchandise is an edible preparation.

For the reasons given we conclude that the collector correctly assessed the instant merchandise at 20 per centum ad valorem on the ground that it is an edible preparation and hence falls under the exception contained in the above-quoted portion of the Torquay Protocol. The judgment of the United States Customs Court is *reversed.*

O'CONNELL, J., was not present during the argument of this appeal, but, by agreement of counsel, did participate in the decision.

WORLEY, J., dissenting.

Nothing contributes more to the certainty and stability of the law than adherence to sound judicial precedents. Unfortunately, however, unless that principle is most carefully applied it can often lead to a judicial point of no return and to unintended and frequently illogical results.[1] I fear that is the situation here.

I respect the views of the majority, but in my opinion none of the authorities relied on, considered separately or as a whole, involving as they do different importations, different facts, and completely different provisions of the tariff statute, are sufficiently in point to properly serve as precedents to the particular facts here.

Nor do I think the dictionary definition relied on necessarily supports the conclusion reached. That the word "edible" is obviously a relative term is best illustrated by the lack of preciseness in the definition itself.

It is conceded that the wheat gluten "* * * cannot, as a practical matter, be eaten by itself * * *." Indeed, the uncontradicted testimony establishes that it is not only never eaten as a food, but is insoluble in the juices of the mouth, is unpalatable and, if chewed, becomes a spongy mass which is virtually impossible to swallow— and even should it be swallowed, is indigestable. That it eventually *becomes* edible I readily concede, but the law requires that merchandise be classified on the basis of its condition at the time of importation. Under such circumstances, and when the characteristics of the instant merchandise are borne in mind, I hardly see how this substance can properly be regarded as edible in a tariff sense or otherwise.

I think the Customs Court was correct and would affirm.

---

[1] "Through the Customs Maze"—Levett.
[2] C. A. D. 685.