Slip Op. 99-54

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NORTH AMERICAN PROCESSING CO.,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Court No. 93-11-00769** |
| | : **BEFORE: CARMAN, CHIEF JUDGE** |
| **UNITED STATES,** | : |
| | : |
| **Defendant.** | : |

Plaintiff, North American Processing Company, challenges the United States Customs Service's (Customs) classification of the merchandise at issue under subheading 0202.30.60, Harmonized Tariff Schedule of the United States (HTSUS), as "meat of bovine animals, frozen, boneless, other," dutiable at a rate of 4.4¢/kg. Plaintiff contends the merchandise is properly classifiable under subheading 1502.00.00, HTSUS, as "fats of bovine animals . . ." and therefore should enter the United States at a dutiable rate of 0.95¢/kg. Defendant, United States, maintains Customs' classification is correct and requests this Court sustain the classification.

Defendant's motion for summary judgment, motion for rehearing, modification, and/or reconsideration of this Court's order denying defendant's motion for summary judgment, and motion *in limine* were denied. A bench trial followed.

*Held*: Plaintiff has not overcome the presumption of correctness attached to Customs' classification of the merchandise at issue and Customs correctly classified the merchandise at issue under subheading 0202.30.60, HTSUS. Therefore judgment is entered for the defendant.

Date: June 25, 1999

*Barnes, Richardson & Colburn* (*Rufus E. Jarman, Jr.* and *Christopher E. Pey*), New York, N.Y., for plaintiff.

*David W. Ogden*, Acting Assistant Attorney General of the United States; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Barbara S. Williams*).

OPINION

CARMAN, CHIEF JUDGE:  Plaintiff, North American Processing Company (North

American), is the importer of the subject merchandise.  The merchandise at issue consists of

bovine fat trimmings[1] containing 35% chemical lean[2] and 65% fat.  Plaintiff challenges the United

States Customs Service's (Customs) classification of the imported merchandise under subheading

0202.30.60, Harmonized Tariff Schedule of the United States (HTSUS), as "meat of bovine

animals, frozen, boneless, other."[3]  Plaintiff contends the merchandise at issue is properly

classified under subheading 1502.00.00, HTSUS, as "fats of bovine animals . . . ."[4]  The Court has

jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994) and, for the reasons that follow, enters

judgment for the defendant.

---

[1]  A sales confirmation describes the imported product as "bovine fat trimmings."  *See* Trial Transcript (Trial Tr.) at 67.

[2]  "Chemical lean" indicates the result of an analysis where the fat content of a sample of imported merchandise is determined by chemical assay under standard laboratory terms.  *See* Trial Tr. at 25.

[3]  The relevant provision of the Harmonized Tariff Schedule of the United States (HTSUS) (1992) states:

| 0202 | Meat of bovine animals, frozen: | |
|---|---|---|
| 0202.30 | Boneless: | |
| 0202.30.60 | Other | 4.4¢/kg |

[4]  The relevant provision of the HTSUS (1992) states:

| 1502.00.00 | Fats of bovine animals, sheep or goats, raw or rendered, whether or not pressed or solvent-extracted | 0.95¢/kg |
|---|---|---|

BACKGROUND

On October 14, 1992, North American entered the merchandise at issue through the port of San Francisco. The merchandise at issue consists of bovine fat trimmings packaged in such a manner that the entire package consists of 35% "lean" and 65% "fat." The entry at issue was classified under subheading 1502.00.00, HTSUS, as "fats of bovine animals . . . ," dutiable at a rate of 0.95¢/kg. The merchandise was liquidated as "no change" under this subheading on February 5, 1993 but was later reliquidated by Customs on February 26, 1993, under subheading 0202.30.60, HTSUS, as "meat of bovine animals, frozen, boneless, other," dutiable at a rate of 4.4¢/kg.

On May 26, 1993, plaintiff filed a protest, pursuant to 19 U.S.C. § 1514(c) (1988), challenging Customs' reliquidation of the merchandise under subheading 0202.30.60, HTSUS. Customs denied this protest on August 4, 1993, and plaintiff timely filed this action. On March 24, 1997, defendant filed a motion for summary judgment. Defendant's motion was denied in February 1998 because "[t]he parties do not agree on the degree to which the fat adheres to the meat, and this issue will require a factual finding by the Court." *North American Processing Co. v. United States*, 1998 WL 72811, at *2 (C.I.T. February 19, 1998) (footnote omitted). This Court further determined a dispute remained regarding how the packaging in which the merchandise was imported was labeled. Defendant subsequently moved for rehearing, modification, and/or reconsideration of this Court's order denying summary judgment. In the alternative, defendant moved *in limine* to exclude certain evidence. Defendant's motions were

denied. A bench trial followed.

CONTENTIONS OF THE PARTIES

A. *Plaintiff*

Plaintiff makes three main arguments in advancing its contention that the subject merchandise is properly classified under subheading 1502.00.00, HTSUS, "fats of bovine animals . . . ." First, plaintiff claims the imported merchandise is *prima facie* classifiable as "fats of bovine animals . . . ," under subheading 1502.00.00, HTSUS, as the imported merchandise consists of fat by its nature, is bought and used for its fat content, is described as "fat trimmings" in commercial documents, and fits within the common meaning of fat. Second, plaintiff asserts the imported merchandise should not be classified as "meat of bovine animals, frozen, boneless, other," as provided under subheading 0202.30.60, HTSUS, and as defined by the Chapter Notes for Chapter 2, HTSUS (Chapter Notes), and the Harmonized Commodity Description and Coding System Explanatory Notes for Chapter 2, HTSUS (Explanatory Notes)[5], because "fat" is excluded from the

---

[5] The Harmonized Commodity Description and Coding System Explanatory Notes (Explanatory Notes) constitute the World Customs Organization's official interpretation of the HTSUS. *See Baxter Healthcare Corp. of Puerto Rico v. United States*, 998 F. Supp. 1133, 1140 n.4 (CIT 1998). While not legally binding on the parties, the Explanatory Notes are useful in ascertaining the classification of the merchandise at issue. *See id.* (quoting *Lonza, Inc. v. United States*, 46 F.3d 1098, 1109 (Fed. Cir. 1995) ("While the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting HTSUS subheadings.")); *see also Rollerblade, Inc. v. United States*, 112 F.3d 481, 486 n.3 (Fed. Cir. 1997) (Although they are not controlling legislative history, the Explanatory Notes are "nonetheless intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting its subheadings.").

chapter[6], the imported merchandise is not suitable for human consumption at importation[7], and the "fat" does not necessarily "adhere[] to [the] meat."[8]  Third, plaintiff contends, if, *arguendo*, the imported merchandise is *prima facie* classifiable as both "meat" and "fat," the "essential character" of the imported merchandise is contributed by the fat component, in accordance with Rule 3 of the General Rules of Interpretation (GRI).[9]

B.  *Defendant*

Defendant makes three contentions in maintaining Customs properly classified the subject merchandise as "meat of bovine animals, frozen, boneless, other" under subheading 0202.30.60, HTSUS.  First, defendant argues the imported merchandise is classifiable pursuant to the plain meaning of the statute.  According to defendant, the definition of "meat" includes both "lean" and

---

[6]  Chapter Note 1(c) for Chapter 2, HTSUS (Chapter Notes), specifically states, "This chapter does not cover: (c) Animal fat, other than products of heading 0209 (chapter 15)[.]" Heading 0209, HTSUS, provides for "pig fat . . . and poultry fat" but is not otherwise relevant to this case.

[7]  Chapter Note 1(a), Chapter 2, HTSUS, states, in pertinent part, "This chapter does not cover: (a) Products . . . unfit or unsuitable for human consumption[.]"

[8]  The general section of the Explanatory Notes for Chapter 2, HTSUS, states, "Animal fat presented separately is **excluded (Chapter 15)** . . . but fat presented in the carcass or adhering to meat is treated as forming part of the meat."

[9]  Rule 3 of the General Rules of Interpretation (GRI), HTSUS, states, in relevant part, "[w]hen, by application of rule 2(b) [referring to goods consisting of more than one material or substance] or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a) [stating headings which provide the most specific description shall be preferred to headings providing a more general description], shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable."

"fat."[10]  As the parties agree that the merchandise at issue is 35% "lean" and 65% "fat," it is, according to defendant, indisputable that the imported merchandise consists of "lean" with "fat" and is therefore "meat" classifiable under subheading 0202.30.60, HTSUS.

Second, defendant contends the Chapter Notes and the Explanatory Notes to Chapter 2 of the HTSUS support a definition of "meat" which includes "lean" and "fat," and, thus, the merchandise falls within the classification of "meat" under 0202.30.60, HTSUS.  According to defendant, the Chapter Notes and Explanatory Notes direct that "the only type of fat **not** covered by the provision for bovine meat is fat presented alone."  (Def.'s Post-Trial Mem. of Law at 6 (Def.'s Mem.).)  Thus, where, as here, fat is not presented alone but rather imported attached to the lean, the merchandise is properly classifiable as bovine meat.  This is true "even if the percentage of fat in the product surpasses the percentage of [lean] component[.]"  (Def.'s Mem. at 6.)  Defendant contends its position is supported further because the merchandise at issue is fit and suitable for human consumption as considered by the Chapter Notes.[11]

Defendant also argues the imported merchandise is not classifiable as "fat" under subheading 1502.00.00, HTSUS, as the imported merchandise is "fat trimmings," a product

---

[10]  Defendant points to the definition of "meat" in Webster's New Collegiate Dictionary (1979) as "animal tissue used as food."  Defendant also points to the definitions of "meat" under the United States Department of Agriculture's (USDA) regulations for the Food Safety and Inspection Service as "part of the muscle of any cattle . . . which is skeletal . . . , *with or without the accompanying and overlying fat*[.]" 9 C.F.R. § 301.2 (West 1999) (emphasis added).  Additionally, defendant states the undisputed evidence at trial demonstrates the term "meat" includes "lean" and "fat," citing witness testimony and documentary evidence presented at trial.

[11]  Note 1(a), Chapter 2, HTSUS, states, in relevant part, "This chapter does not cover: (a) Products . . . unfit or unsuitable for human consumption[.]"

distinct from "beef fat." Defendant sites testimony of Rod McNally, Vice President of Industrial

Sales, South American Meat Products Company, indicating "beef fat" and "fat trimmings" are

different products and not interchangeable. According to Mr. McNally, "beef fat" is fat and must

be so labeled on the finished product; "fat trimmings," however, are meat and would therefore be

labeled "beef" as an ingredient in a product which contained the imported merchandise. Moreover,

defendant contends, the United States Department of Agriculture's (USDA) standards consider "fat

trimmings" which are more than twelve percent "lean" to be "meat" rather than "fat."

Finally, defendant asserts, in the alternative, if GRI 3 were examined, the "essential

character" of the imported merchandise is "lean" not "fat." Defendant initially argues GRI 3 is

inapplicable because the Chapter Notes and Explanatory Notes are sufficient to classify the

imported merchandise pursuant to GRI 1. Defendant also contends the merchandise is not *prima

facie* classifiable under two or more headings, a prerequisite for applying GRI 3. Even if, however,

GRI 3 were examined, defendant argues the merchandise would still be classifiable as bovine meat

as the critical component of the imported merchandise is the lean component since it is the

percentage of lean which determines the price of the merchandise. Also, defendant argues, a

purchaser buys the imported merchandise based on the percentage of lean, not fat. Accordingly,

the lean portion constitutes the "essential character" of the product.

STANDARD OF REVIEW

Determining whether imported merchandise has been classified under an appropriate tariff

provision involves a two step process: (1) ascertaining the proper meaning of terms in the tariff

provision; and (2) determining whether the merchandise at issue comes within the description of

such terms. *See Universal Elecs., Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997) (citing *Intel Singapore, Ltd. v. United States*, 83 F.3d 1416, 1417-18 (Fed. Cir. 1996)). The first step is a question of law; the second, a question of fact. *See id.*; *see also Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995).

By statute, Customs' classification decisions are presumed to be correct, and the party challenging the classification has the burden of proving otherwise. *See* 28 U.S.C. § 2639(a)(1) (1994). While the statute provides Customs' decisions with a presumption of correctness, the presumption "is a procedural device that is designed to allocate, between the two litigants to a lawsuit, the burden of producing evidence in sufficient quantity." *Universal Elecs., Inc.*, 112 F.3d at 492 (emphasis omitted). While the presumption of correctness "carries force on any factual components of a classification decision," it "carries no force as to questions of law," which this Court reviews *de novo*. *Id.*

The Court reviews Customs' classification decisions *de novo* under 28 U.S.C. § 2640(a)(1) (1994) and is required to reach the correct result. *See* 28 U.S.C. § 2643(b) (1994); *see also Jarvis Clark Co. v. United States*, 733 F.2d 873, 880 (Fed. Cir. 1984) (finding once plaintiff establishes Customs' classification is incorrect, the Court has a duty "to find the correct answer" or remand for further proceedings). In determining whether the importer has overcome the statutory presumption of correctness, the court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.*, 733 F.2d at 878.

DISCUSSION

A.      *The Physical Nature and Description of the Imported Merchandise*

After hearing the evidence offered *de novo* at trial and reviewing the papers of the parties, the Court makes the following findings.  First, the Court finds the merchandise at issue is edible at importation.  Mr. McNally testified it is possible to cook the imported merchandise and eat it.  *See* Trial Transcript (Trial Tr.) at 88.  Mr. McNally also testified the imported merchandise is edible specifically at importation.  *See* Trial Tr. at 89.  Further, Mr. McNally and Peter Maloney, in charge of meat importation and distribution at Louis Dreyfus Corporation, testified the imported merchandise is ultimately used in products intended for human consumption.  *See* Trial Tr. at 79 (used in meat blocks for chili), 43 (used in sausages and hamburgers).  Also, the Court notes James B. Sinclair, Import Coordinator for the USDA's Food, Safety and Inspection Service, opined the merchandise "is edible and . . . suitable for human consumption."  *See* Trial Tr. at 129.  The Court finds the witnesses' testimony to be persuasive and concludes the imported merchandise is edible at importation.

Second, the Court finds, and the parties do not dispute, the imported merchandise consists of 35% "lean" and 65% "fat."  The Court notes the vast majority of the sample provided to the Court which represents an accurate characterization of the imported merchandise consists primarily of pieces of "lean" and "fat" with varying percentages of the constituent parts in each.  *See* Plaintiff's Exhibit 11 and Defendant's Exhibit E.  The defendant's exhibit has only "one little piece" that is "fat" alone.  *See* Trial Tr. at 167.

Third, the Court finds the packaging in which the merchandise was imported was labeled

"A-Fat-Trim." The Court notes Mr. McNally testified a purchase order similar to the purchase orders used by North American indicated the imported merchandise at issue was described as "A-Fat-Trimming." *See* Trial Tr. at 65. Further, Mr. McNally testified Exhibit 4 indicated the boxes in which the imported merchandise was transported were to be marked "A-Fat-Trim." *See* Trial Tr. at 66. In Mr. McNally's experience, such instructions are normally followed. *See* Trial Tr. at 66. The Court finds Mr. McNally's testimony persuasive. Having made these findings, the Court now turns to its determinations on the questions of law raised in this matter.[12]

B.       *Scope of the Term "Meat of Bovine Animals, Frozen, Boneless, Other"*

The controlling issue in this case is the scope of the phrase "meat of bovine animals, frozen, boneless, other," under subheading 0202.30.60, HTSUS. Classification of merchandise under the HTSUS is performed in accordance with the GRI, taken in order. *See, e.g., Baxter Healthcare Corp. of Puerto Rico v. United States*, 998 F. Supp. 1133, 1139 (CIT 1998). GRI 1 states, in relevant part, "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. When a tariff term is not clearly defined by either the HTSUS or legislative history, the correct meaning of a term is usually resolved by looking to its common and commercial meaning. *See, e.g., Myers v. United States*, 969 F. Supp. 66, 73 (CIT 1997) (citing *W.Y. Moberly, Inc. v. United States*, 924 F.2d 232, 235 (Fed. Cir. 1991)). In construing such terms, the court may "rely upon its own understanding,

---

[12] This Court finds the issue regarding adherence between "fat" and "meat" to be inconclusive. Mr. Sinclair testified the adherence relationship between the "fat" and the "meat" is "interchangeable." *See* Trial Tr. at 170-71. As neither party provided evidence to the contrary, the Court finds the statement by Mr. Sinclair insufficient to determine the adherence relationship.

dictionaries and other reliable sources." *Medline Indus., Inc.*, 62 F.3d at 1409 (citing *Marubeni Am. Corp. v. United States*, 35 F.3d 530 (Fed. Cir. 1994)).

Finding the term "meat" is not clearly defined by the headings and subheadings of Chapter 2, HTSUS, the Court notes the general section of the Explanatory Notes for Chapter 2 limits "meat" within the chapter to "meat in carcasses . . . suitable for human consumption." Additionally, the Chapter Notes indicate Chapter 2 does not cover "[p]roducts . . . unfit or unsuitable for human consumption." Case law finds a product is suitable for human consumption[13] when the product is habitually eaten as an ingredient in food, even though the product may not be eaten by itself at importation. *See United States v. P. John Hanrahan, Inc*., 45 C.C.P.A. 120 (1958) (holding wheat gum gluten classifiable as an edible preparation for human consumption even though it had to be mixed with other ingredients and cooked before actual eating, since, as imported, it was capable of being eaten). *Compare Cook v. United States*, 1962 WL 10581 (Cust. Ct. July 10, 1962) (holding wheat, as imported, was commercially unfit for human consumption although after importation could be blended with wheat which was fit for human consumption and therefore make the wheat fit for human consumption; however, parties stipulated during trial that wheat as imported was unfit for human consumption, and the court would not disturb that stipulated fact). While the Chapter Notes and Explanatory Notes clarify what type of product fits within Chapter 2, HTSUS, they are not helpful in identifying the specific definition of "meat." Thus, the Court turns to the common and commercial meaning of the term "meat."

---

[13] Although case law refers to food which is "edible," the Court finds the term synonymous with "suitable for human consumption" as the definition of "edible" is "suitable by nature for use as food esp. for human beings." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 722 (1981).

The Court finds the common and commercial meaning of the term "meat" is broad and encompasses both "lean" and "fat" constituent elements. The Court notes Mr. McNally testified the combination of "lean" and "fat" was considered "meat." *See* Trial Tr. at 116.[14] Additionally, Mr. Sinclair opined the "fat" and "lean" components together were called "meat."[15] *See* Trial Tr. at 145-46. Finally, the Court notes the testimony of Mr. Sinclair also stated the USDA recognizes "meat" as containing a combination of "fat" and "lean" up to twelve percent fat. *See* Trial Tr. at 151. The Court finds the testimony of these individuals persuasive.

This finding is supported by the definition of "meat" in the USDA regulations. The USDA regulations define "meat," in part, as "[t]he part of the muscle of any cattle . . . with or without the accompanying and overlying fat . . . ." Food and Safety Inspection Service, Department of Agriculture, 9 C.F.R. § 301.2 (West 1999). While the USDA's regulations are not controlling, the Court finds the USDA's definition of "meat" persuasive.[16]

Plaintiff argues that the purpose and use of the imported merchandise should control this

---

[14] The Court notes Mr. McNally also testified a slice of the "red portion" of the merchandise at issue could be referred to as either "lean" or "a piece of meat." *See* Trial Tr. at 117. This statement does not alter the Court's finding regarding the definition of "meat." In determining a common and commercial meaning, the Court considers all evidence before it. Here, the Court finds, on balance, "meat" is defined as a composite of "lean" and "fat."

[15] The Court notes Mr. Sinclair does not protest the interchangeable use of the terms "meat" and "lean" on cross examination by plaintiff's counsel. *See* Trial Tr. at 166. The Court finds, however, Mr. Sinclair's testimony in toto recognizes a definition of "meat" which contains "lean" and "fat" constituent elements.

[16] *See Foodcomm Int'l v. United States*, 19 CIT 1421, 1427, 914 F. Supp. 548, 553 (1995) (finding the definition of "beef" under the USDA's regulation relevant to the definition of "beef" for Customs' classification purposes).

Court's determination of the correct classification of the merchandise at issue. Plaintiff points to this Court's decision in *United States v. Quon Quon Co.*, 46 C.C.P.A. 70, 73 (1959) (considering use in *eo nomine* classifications where it is included in the definition of the merchandise at issue), to support its argument. Plaintiff argues the imported merchandise in this case is bought and used for its fat content, *see* Trial Tr. at 91-93, and used to mix with other ingredients to raise the level of fat in the product, *see* Trial Tr. at 137. Thus, according to plaintiff, the imported merchandise should be classified under subheading 1502.00.00, HTSUS, as "fats of bovine animals . . . ."

Generally, use is not a criterion in determining whether merchandise is classifiable under an *eo nomine* designation where the provision is clear and unambiguous, without any suggestion that use should influence the classification.[17] *See* Ruth Sturm, CUSTOMS LAW & ADMINISTRATION § 53.2, 11-12 (Supp. 1995). "Use," however, may be considered by the Court in determining the correct classification of imported merchandise if "use" is part of the definition of the classification. *See, e.g., Quon Quon*, 46 C.C.P.A. at 73 (considering "use" of the imported product where the product is defined as merchandise "used for the purpose of holding, protecting, or carrying any commodity").

Here, "meat" is defined as "animal tissue *used as food*." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1400 (1981) (emphasis added). Therefore, the way in which the imported merchandise is used may be considered by this Court. This consideration, however, is

[17] It appears the heading at issue, "meat of bovine animals, frozen, boneless, other," is an *eo nomine* provision as it describes a commodity by a specific name, "meat," well known in commerce. *See United States v. Paul M.W. Bruckmann*, 65 C.C.P.A. 90, 94 n.8, 582 F.2d 622 (1978).

merely a factor in the Court's determination of the correct classification and is not controlling. *See Myers*, 969 F. Supp. at 72.

C.     *The Merchandise at Issue Is Properly Classified as "Meat of Bovine Animals"*

The determination of whether the merchandise at issue falls within the tariff provision "meat of bovine animals, frozen, boneless, other" is a factual question, and therefore Customs' classification is entitled to a presumption of correctness. *See Universal Elecs., Inc.*, 112 F.3d at 491 (noting precedent establishes "the decision of Customs is presumed to be correct").

The Court finds the plaintiff has not produced sufficient evidence to overcome the presumption of correctness attached to Customs' classification. The Court is persuaded the subject merchandise is properly classified under subheading 0202.30.60, HTSUS, by, among other things, the evidence presented at trial. According to industry representatives and in accordance with the findings of this Court, the term "meat" encompasses both "lean" and "fat." Here, the parties do not dispute the imported merchandise consists of 35% "lean" and 65% "fat." Under the broad definition of the term "meat" ascertained at trial, the Court concludes the merchandise at issue fits within this definition. Thus, the Court finds the merchandise at issue is properly classified under subheading, 0202.30.60, HTSUS, as "meat of bovine animals, frozen, boneless, other."

The Court also finds the labeling of the imported merchandise informative. According to Mr. McNally, "A-Fat-Trim" means "fat trimmings." *See* Trial Tr. at 66. "Fat trimmings" are distinct from "beef fat." *See* Trial Tr. at 76. While "beef fat" must be labeled as "beef fat" on food labels, "fat trimmings" are labeled "beef." *See* Trial Tr. at 76-77. The Court finds the labeling of

the imported merchandise adds weight to the Court's determination that the imported merchandise is correctly classified under subheading 0202.30.60, HTSUS.

Even considering use as a factor in determining the classification of the imported merchandise, the product is properly classified as "meat of bovine animals, frozen, boneless, other" under subheading 0202.30.60, HTSUS. The reference to "use" in the definition of "meat" requires that the product be "used as food." According to the testimony of the witnesses at trial, the imported merchandise is used as food. Witnesses testified that the imported merchandise is mixed with other ingredients to make food products. *See* Trial Tr. at 79 (used in meat blocks for chili), 43 (used in sausages and hamburgers). Additionally, although the imported merchandise may be used as "fat," in the sense that the "fat" portion of the merchandise "fattens" leaner meat, the lean portion of the merchandise is also important and is used to provide texture for food products. *See* Trial Tr. at 81. Hence, even considering the product's use, it is properly classified as "meat."

The Court finds the Chapter Notes and Explanatory Notes provide additional support for the Court's determination the plaintiff has not overcome the statutory presumption of correctness. The Court is persuaded the merchandise at issue is edible, and therefore suitable for human consumption, at importation from the evidence presented at trial by industry representatives. This finding comports with the definition of meat provided in the Chapter Notes and Explanatory Notes for Chapter 2, HTSUS, and case law. Thus, the Court concludes the merchandise at issue is correctly classified under subheading, 0202.30.60, HTSUS, as "meat of bovine animals, frozen, boneless, other."

The Court also finds the imported merchandise cannot be classified as "fats of bovine

animals . . . ." While neither the statute nor the Chapter Notes for Chapter 15, HTSUS, provide an

adequate definition of the term "fats of bovine animals," Webster's Third New International

Dictionary defines "fat" as:

> a part of the tissues of an animal that consists chiefly of cells distended with greasy or oily
> matter . . . the oily or greasy substance that makes up the bulk of the cell contents of
> adipose tissue and occurs in smaller quantities in many other parts of animals and in plants .
> . . any of a class of neutral solid, semisolid, or liquid chemical compounds that are
> insoluble in water but soluble in ether and other organic solvents . . . ."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 827 (1981). The dictionary definition of

"fat" does not appear to include a "lean" component. Further, the Explanatory Notes for Chapter 2

indicate only "[a]nimal fat presented *separately*" should be classified under Chapter 15 (emphasis

added). Since the imported merchandise is a composite of "fat" and "lean" and not independent

pieces of "fat," this Court finds the merchandise cannot be classified as "fats of bovine animals . . .

" under subheading 1502.00.00, HTSUS.[18]


As the Court has determined the merchandise at issue is properly classified under

subheading 0202.30.60, HTSUS, based on the plain meaning of the statute, the Chapter Notes, the

common and commercial definition of the term, and the Explanatory Notes, the Court finds it

unnecessary to consider fully plaintiff's "essential character" argument. The "essential character"

argument under GRI 3 applies only when an article is *prima facie* classifiable under two or more

---

[18]  To the extent that a single piece of "fat" exists in the sample merchandise, this Court
finds the piece is an immaterial part of the merchandise as a whole and therefore *de minimus* and
irrelevant to this Court's classification analysis. *See Varsity Watch Co. v. United States*, 34
C.C.P.A. 155 (1947) (concluding certain amounts of an ingredient may be ignored for
classification purposes if it did not enhance the value of the merchandise, had no purpose in
commerce, or was an unintentional adulterant).

headings. *See, e.g., Ciba-Geigy Corp. v. United States*, 1998 WL 928572, at *8 (C.I.T. Dec. 29, 1998); *see also American Bayridge Corp. v. United States*, 35 F. Supp.2d 922, 933 (CIT 1998). Case law suggests an article is *prima facie* classifiable under two headings where the merchandise either is imported in separate parts, *see, e.g., Better Home Plastics Corp. v. United States*, 119 F.3d 969 (Fed. Cir. 1997) (finding shower curtain composed of two parts and therefore potentially classifiable as either liner or as textile curtain), or is classifiable under either of two headings, *see, e.g., Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998) (holding imported sauces could be classified as either sauce or as components of sauce). As the Court finds the product at issue is only classifiable under one subheading and as the merchandise is imported in solid blocks of 35% "lean" and 65% "fat," the Court finds the "essential character" analysis does not apply to this case.

The Court finds plaintiff's "commingling of goods" argument under General Note 5(d) of the HTSUS[19] raised by plaintiff at trial and considered by this Court pursuant to its duty under 28 U.S.C. § 2643(b) to "reach the correct decision" to be inapplicable. *See Jarvis Clark*, 733 F.2d at 873. General Note 5(d) states, in pertinent part, if "the value of the commingled goods is less than the aggregate value would be if the shipment were segregated; . . . the shipment is not capable of segregation without excessive cost and will not be segregated prior to its use in a manufacturing process or otherwise; and . . . the commingling was not intended to avoid the payment of lawful duties . . ." then the goods "shall be considered for all customs purposes to be dutiable at the rate

---

[19]  General Note 5(d) existed in 1992 when the merchandise at issue was imported. Therefore, this Court applies the language of the statute in force at the time of the importation. The same provision currently exists as General Note 17(d) (1998).

applicable to the material present in greater quantity than any other material."

The Court reads the term "commingled goods" to apply to two or more goods shipped together whose component parts do not constitute a single entry. *See, e.g., Wakunaga of Am. Co., Ltd. v. United States*, 1 CIT 302 (1981) (finding where imported good viewed as single product, provisions for elements of the product irrelevant for the purposes of import classification). As noted previously, the Court finds the merchandise at issue is classifiable only as a single product, "meat." The Court also notes the merchandise was imported under contract as a single product with 35% chemical lean.[20] *See* Complaint, ¶ 8. Thus, the Court concludes the merchandise was purchased and imported as a single, specific product, classifiable as a single entry. Therefore, the Court finds plaintiff's "commingling of goods" argument is inapplicable.

CONCLUSION

For the reasons stated above, the Court finds plaintiff has not overcome the statutory presumption of correctness attached to Customs' classification of the merchandise at issue and holds that Customs correctly classified the merchandise at issue under subheading 0202.30.60, HTSUS. Therefore, Customs' classification and assessment of duties is sustained. Accordingly, this action is dismissed.

_____
Gregory W. Carman, Chief Judge

Dated: June 25, 1999
        New York, New York

---

[20] 35% chemical lean indicates a ratio of 35% lean to 65% fat.

**ERRATA**

North American Processing Company v. United States, Court No. 93-11-00769, Slip-Op. 99-54, dated June 25, 1999.

On p. 12, delete line 6, which currently states: "meat" as containing a combination of "fat" and "lean" up to twelve percent fat. *See* Trial Tr. at

Replace line 6 with the following: that trimmings with "12 percent or more lean [are] considered meat[.]" Trial Tr. at

July 7, 1999.