NORTH AMERICAN PROCESSING
COMPANY, Plaintiff–
Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 99–1545.

United States Court of Appeals,
Federal Circuit.

Jan. 8, 2001.

Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, of New York, NY, argued for plaintiff-appellant.

Barbara S. Williams, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director, Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.

Before LOURIE, LINN, and DYK, Circuit Judges.

LOURIE, Circuit Judge.

North American Processing Company ("North American") appeals from the decision of the United States Court of International Trade sustaining the classification by the United States Customs Service ("Customs") of its imported bovine fat trimmings under subheading 0202.30.60 of the Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202 (1994) ("HTSUS"). *North American Processing Co. v. United States,* 56 F.Supp.2d 1174 (C.I.T.1999). Because we conclude that the Court of International Trade did not err in determining that Customs correctly classified the merchandise at issue, we affirm.

## BACKGROUND

The imported goods at issue in this case are bovine fat trimmings containing thirty-five percent chemical lean [1] and sixty-five percent fat, which were imported by North American on October 14, 1992.[2] *Id.* at 1175. Customs originally classified the entry under subheading 1502.00.00 as "[f]ats of bovine animals ...," dutiable at a rate of 0.95¢/kg. Subheading 1502.00.00 reads as follows:

> 1502.00.00 Fats of bovine animals, sheep or goats, raw or rendered, whether or not pressed or solvent-extracted

HTSUS, subheading 1502.00.00. Customs later reliquidated the merchandise on February 23, 1993, and classified it under subheading 0202.30.60 as "[m]eat of bovine animals ...," dutiable at a rate of 4.4¢/kg. *N. Am.,* 56 F.Supp.2d at 1175. Subheading 0202.30.60 reads as follows:

> 0202 Meat of bovine animals, frozen:
>
> ....
>
> 0202.30 Boneless:
>
> 0202.30.60 Other

HTSUS, heading 0202.

North American filed a protest pursuant to 19 U.S.C. § 1514(c) (1994), which Cus-

---

1. "Chemical lean" indicates the results of an analysis where the fat content of a sample of the imported merchandise is determined by chemical assay under standard laboratory conditions. *N. Am.,* 56 F.Supp.2d at 1175 n. 2.

2. Accordingly, all references to the HTSUS are to the 1992 edition.

toms denied. *N. Am.*, 56 F.Supp.2d at 1175. Thereafter, North American challenged Customs' classification in the Court of International Trade, arguing that its fat trimmings should have been classified under subheading 1502.00.00. *Id.*

The Court of International Trade sustained Customs' classification of the imported fat trimmings under subheading 0202.30.60. *Id.* at 1182. The court found that, based on the testimony presented at trial and certain United States Department of Agriculture ("USDA") regulations and product classifications, the common and commercial meaning of "meat" encompasses merchandise containing both lean and fat elements. *Id.* at 1177. Conversely, the court noted that the definition of "fats" does not include a lean component, and thus determined that subheading 1502.00.00 was inapplicable. *Id.* at 1180. As a result, the court refused to address General Rule of Interpretation ("GRI") 3, which states that goods "shall be classified as if they consisted of the material or component that gives them their essential character" when the merchandise is *prima facie* classifiable under two or more headings. *Id.* at 1176. Accordingly, the court held that Customs properly classified North American's imported fat trimmings as "meat" under subheading 0202.30.60. *Id.* at 1182.

North American timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

■ Determining whether imported merchandise has been properly classified under an appropriate tariff provision is ultimately an issue of statutory interpretation and thus a question of law. *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed.Cir.1998). Resolution of that issue entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms

as properly construed. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir.1999). The first step is a question of law over which this court exercises complete and independent review. *Id.* The second step is a question of fact that this court reviews for clear error. *Id.* Furthermore, Customs' classification determinations are presumed to be correct. 28 U.S.C. § 2639(a)(1) (1994). Therefore, as the party challenging the classification, North American bore the burden of proof in the Court of International Trade. *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed.Cir.1999).

■ North American argues that the Court of International Trade erred in concluding that Customs properly classified the subject merchandise under subheading 0202.30.60. North American asserts that Customs erroneously based its classification solely on scientific definitions, and argues that the testimony of experts within the imported meat trade indicates that the merchandise at issue is properly classifiable as "fats" under subheading 1502.00.00. North American contends that the fat trimmings at issue may not be classified as "meat" because the Chapter Notes to chapter 2 explicitly state that fat is not covered under that chapter. Finally, North American argues that even if the merchandise may be classified as either "meat" or "fats," GRI 3 mandates that it be classified under subheading 1502.00.00 because the essential character of the fat trimmings comes from its use in fattening up an otherwise lean mixture.

The government responds that the Court of International Trade correctly affirmed Customs' classification of North American's fat trimmings under subheading 0202.30.60. The government asserts that the merchandise at issue may be classified as "meat" under both USDA regulations and the Explanatory Notes to chapter 2. The government contends that subheading 1502.00.00 is inapplicable because only those fat trimmings that con-

tain less than twelve percent lean may be considered "fats" according to USDA product classification standards. Finally, the government argues that even if the imported merchandise can be classified as both "meat" and "fats," thus implicating GRI 3, it is properly classified as "meat" because its value is determined solely by the amount of lean present in the mixture.

■■■ Applied in numerical order, the GRIs of the HTSUS and the Additional United States Rules of Interpretation govern the proper classification of merchandise entering the United States. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed.Cir.1999). According to GRI 1, "classification shall be determined according to the terms of the headings and any relevant section or chapter notes." Thus, "a court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Baxter*, 182 F.3d at 1337 (quoting *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed.Cir.1998)). Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meaning. *Carl Zeiss*, 195 F.3d at 1379. A court may rely upon its own understanding of the terms used, lexicographic and scientific authorities, dictionaries, and other reliable information. *Id.*

■■■ We agree with the government that the merchandise is properly classified under subheading 0202.30.60. The Explanatory Notes to chapter 2 expressly state that "[a]nimal fat presented separately is excluded ..., but fat presented in the carcass *or adhering to meat* is treated as forming part of the meat." HTSUS, ch. 2 Explanatory Notes (emphasis added). Although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions. *E.g., Carl Zeiss*, 195 F.3d at 1378 n. 1 (citing H.R. Conf. Rep. No. 100–576, at 549 (1988),

*reprinted in* 1998 U.S.C.C.A.N. 1547, 1582). Therefore, it is clear that Congress intended that the presence of fat in a mixture containing lean and fat components does not preclude its classification as "meat." In the present case, the subject merchandise is comprised of fat which adheres to a lean component, and is not separately presented. It thus fits within that classification. Moreover, USDA regulations define "meat" as "[t]he part of the muscle of any cattle, sheep, swine, or goats ... *with or without the accompanying and overlying fat....*" 9 C.F.R. § 301.2 (2000) (emphasis added). While USDA regulations are not dispositive of whether a Customs classification ruling is correct, we find them to be persuasive regarding this issue. *See Carl Zeiss*, 195 F.3d at 1379 (permitting courts to consult any reliable information source to determine the proper classification of merchandise). Accordingly, we find that the imported merchandise at issue is properly classified as "meat" under subheading 0202.30.60.

We also agree with the government that the imported merchandise may not be classified as "fats" under subheading 1502.00.00. The government presented undisputed testimony at trial that the USDA considers trimmings that contain less than twelve percent lean to be properly classified as fat. Therefore, because the subject merchandise contains a lean component that comprises far more than twelve percent of the total mixture, it may not be classified as "fats." The dictionary definition of the term "fat" further supports this conclusion. "Fat" is defined as

[the] part of the tissues of an animal that consists chiefly of cells distended with greasy or oily matter ... [;] the oily or greasy substance that makes up the bulk of the cell contents of adipose tissue and occurs in smaller quantities in many other parts of animals and in plants....

Webster's Third New International Dictionary 827 (1981). Accordingly, we conclude

that subheading 1502.00.00 is inapplicable to the merchandise at issue.

Finally, as the imported merchandise at issue may only be classified as "meat" under subheading 0202.30.60, we need not address North American's GRI 3 argument.

## CONCLUSION

Because the Court of International Trade did not err in concluding that Customs correctly classified the merchandise at issue under subheading 0202.30.60, we

*AFFIRM.*