Slip Op. 06-1

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                               :
ESSEX MANUFACTURING, INC.,      :
                               :
         Plaintiff,            :
                               :  Before: Richard K. Eaton, Judge
         v.                    :
                               :  Court No. 02-00101
UNITED STATES,                  :
                               :
         Defendant.            :
                               :
                               :
_____:
```

OPINION

[Defendant's motion for summary judgment granted; Plaintiff's cross-motion for summary judgment denied; case dismissed]

Dated: January 3, 2006

*Neville Peterson, LLP* (*John M. Peterson* and *Maria E. Celis*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *Barbara S. Williams*, Attorney-in-Charge, International Trade Field Office (*Jack S. Rockafellow*); *Chi S. Choy*, Office of Assistant Chief Counsel for United States Bureau of Customs and Border Protection, of counsel, for defendant.

Eaton, Judge: This matter is before the court on cross-motions for summary judgment pursuant to USCIT Rule 56. Plaintiff Essex Manufacturing, Inc. ("Essex" or "plaintiff"), challenges the classification of its imitation leather jackets by

the United States Customs Service ("Customs")[1] under the

Harmonized Tariff Schedule of the United States (2000)

("HTSUS").[2]  Customs classified the jackets under HTSUS

subheading 3926.20.90 as "Other articles of plastics and articles

of other materials of headings 3901 to 3914: . . . . Articles of

apparel or clothing accessories (including gloves, mittens and

mitts): . . . Other: . . . " subject to a 5% *ad valorem* tariff

rate.[3]  Essex argues that its jackets are properly classifiable

_____

[1]      Effective March 1, 2003, the United States Customs
Service was renamed the United States Bureau of Customs and
Border Protection.  *See* Reorganization Plan Modification for the
Dep't of Homeland Security, H.R. Doc. 108-32 at 4 (2003).

[2]      With respect to the subsections at issue in this
action, the terms of the Harmonized Tariff Schedule of the United
States in 1999 are identical to those of 2000.

[3]      It is undisputed that Customs properly found in
Headquarters Ruling Letter 963800 of April 17, 2001, that in
order to classify the jackets under plaintiff's proposed
subheading, HTSUS 3926.20.60, plaintiff had to establish that:

1. The article in issue is plastic;

2. The article is "rainwear," which includes jackets,
coats, ponchos, parkas and slickers;

3. The article features an outer shell of polyvinyl
chloride plastic;

4. The article may, but need not feature an attached
hood; and

5. The article is not valued over ten ($10) dollars per
unit.

*See also* Pl.'s Mem. of Points and Auth. in Supp. of Pl.'s Mot.
for Summ. J. at 7.  It is also undisputed that defendant concedes
(continued...)

under HTSUS subheading 3926.20.60 as "Plastic rainwear, including jackets, coats, ponchos, parkas and slickers, featuring an outer shell of polyvinyl chloride plastic with or without attached hoods, valued not over $10 per unit," and, thus, not subject to any tariff.  By its cross-motion, defendant United States (the "Government" or "defendant"), on behalf of Customs, maintains that Customs properly classified the subject merchandise under HTSUS subheading 3926.20.90, and asks the court to deny Essex's motion and dismiss this case.  The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2000).  For the reasons set forth below, the court denies plaintiff's motion for summary judgment, grants the Government's cross-motion for summary judgment, and dismisses this case.

BACKGROUND

Plaintiff is an importer of the subject merchandise, which it identifies as polyvinyl chloride ("PVC") or "pleather" jackets.  *See* Pl.'s Mem. of Points and Auth. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 1.  In June, July, and August of 1999, plaintiff imported these jackets at ports of entry in Atlanta, Georgia and Los Angeles, California.  *See* Summons of

---

[3](...continued)
that plaintiff's jackets meet each of these criteria except so much of number 2 as requires that the jackets be "rainwear."  *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J., and in Supp. of a Trial or Def.'s Cross-Mot. for Summ. J. ("Def.'s Mem.") at 7.

1/17/01.  Customs subsequently liquidated plaintiff's five Atlanta entries in November 1999, and the single Los Angeles entry in June 2000, classifying the merchandise under HTSUS subheading 3926.20.90.  *Id*.  Thereafter, plaintiff timely filed protests challenging Customs' classification.[4]  Customs, finding that plaintiff's jackets were not "rainwear," denied the protests and plaintiff timely commenced the present action.  *Id*.  Both parties then moved for summary judgment pursuant to USCIT Rule 56.  After briefing was complete, the court ordered each party to submit a letter brief addressing the issue of whether there was a "common or commercial" meaning of the term "rainwear."  *See* Pl.'s Letter of 6/24/05; Def.'s Letter of 6/24/05.  Further, on August 4, 2005, an evidentiary hearing was held.  At the hearing, in addition to presenting testimony as to the "common or commercial" meaning of the term "rainwear," the parties, through their expert witnesses and various exhibits, also presented evidence as to the construction, design, and marketing of plaintiff's jackets and other garments.  All of the testimony presented by the expert witnesses was subject to cross-examination by opposing counsel as well as questioning by the court.

---

[4]     Plaintiff filed its protest concerning the Atlanta entries on December 22, 1999, and the Los Angeles entry on June 12, 2001.  *See* Summons of 1/17/01.

STANDARD OF REVIEW

This court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." USCIT R. 56(c). Summary judgment of a classification issue "is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb,* 148 F.3d at 1365; *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed. Cir. 1997). Where jurisdiction is predicated on 28 U.S.C. § 1581(a), Customs' interpretation of an HTSUS tariff term, a question of law, is subject to *de novo* review. *See* 28 U.S.C. § 2640(a)(1); *see also E.T. Horn Co. v. United States*, 27 CIT __, __, slip op. 03-20 at 4 (Feb. 27, 2003) (not published in the Federal Supplement) (quoting *Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1466–67 (Fed. Cir. 1998)).

DISCUSSION

The court employs a two-step process when analyzing a classification issue: "[F]irst, construe the relevant classification headings; and second, determine under which of the

properly construed tariff terms the merchandise at issue falls." *Bausch & Lomb*, 148 F.3d at 1365 (citing *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997)).  Here, the court finds, and the parties agree, that the subject merchandise should be classified within HTSUS chapter 39, which provides for classification of "plastics and articles thereof."  Furthermore, there is no disagreement that the subject merchandise should be classified within heading 3926, which provides for "Other articles of plastics and articles of other materials of headings 3901 to 3914."  The parties differ, however, as to the appropriate classification subheading.  Plaintiff argues that the subject merchandise should be classified under subheading 3926.20.60 as "Plastic *rainwear*, including jackets . . . featuring an outer shell of polyvinyl chloride plastic . . . valued not over $10 per unit."  *See* Pl.'s Mem. of Points and Auth. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 1-2 (emphasis added).  Defendant, on the other hand, claims that, because it is not rainwear, the subject merchandise is properly classified under subheading 3926.20's "basket" provision, i.e., "Other articles of plastics . . . Articles of apparel . . . , Other . . . " under subheading 3926.20.90.  *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J., and in Supp. of a Trial or Def.'s Cross-Mot. for Summ. J. ("Def.'s Mem.") at 7.  Where goods are capable of being classified under two or more headings, the

General Rules of Interpretation[5] ("GRI") direct that the "most specific description shall be preferred to headings providing a more general description."  GRI 3(a).  Under the GRIs, then, if this court finds that the jackets constitute "rainwear," plaintiff's more specific proposed subheading would trump defendant's general provision.  Therefore, because "[t]he meaning of [a] tariff[] term is a question of law," the classification of plaintiff's jackets is, in accordance with the two-step process, initially dependent upon this court's construction of the word "rainwear."  *See E.M. Chem. v. United States*, 20 CIT 382, 386, 923 F. Supp. 202, 206 (1996) (citing *E.M. Chem. v. United States*, 920 F.2d 910, 912 (Fed. Cir. 1990)).

I.  HTSUS 3926.20.60 is a Principal Use Provision

For plaintiff to prevail in its proposed classification, its jackets must be shown to be rainwear.  Both parties contend that "rainwear," as contained in subheading 3926.20.60, is a use provision.  *See* Pl.'s Opp'n at 16–17; Def.'s Mem. at 1.  As such, the term is properly read in the subheading as "plastic apparel

---

[5]     Classification of goods under the HTSUS is governed by the General Rules of Interpretation ("GRI").  *See Carl Zeiss v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)).  If the proper classification cannot be determined by reference to GRI 1, it is then necessary to refer to the succeeding GRIs in numerical order.  *See N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001) (citation omitted).

used as rainwear." *See United States v. Hillier's Son Co.*, 14 Ct. Cust. App. 216, 222 (1929) ("Obviously, the test of use must be applied to a preparation in order to determine whether it is to be classified as a medicinal preparation, although the word 'use' does not appear in paragraph 5."); *see also Stewart-Warner Corp. v. United States*, 748 F.2d 663, 667 (Fed. Cir. 1984) (stating that "[d]og food is a tariff item which, like smokers' articles, household utensils, tableware, and other classifications too numerous to detail, is a use classification. It means food that is used to feed dogs."). Moreover, in completing the first step of the two-step process, the court is required to reach a conclusion as to the principal use of the subject merchandise. Under the Additional U.S. Rules of Interpretation ("AUSRI"),

> 1. In the absence of special language or context which otherwise requires–
>
>> (a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and *the controlling use is the principal use* . . . .

AUSRI 1(a) (emphasis added). Principal use is "the use 'which exceeds any other *single* use.'" *Lenox Collections v. United States*, 20 CIT 194, 196 (1996) (not reported in the Federal Supplement) (emphasis in original). Thus, the court must decide

if plaintiff's jackets belong to the class or kind of goods principally used as rainwear.


     A.    Proper Meaning of Rainwear under the HTSUS

     "Where a tariff term is not defined in either the HTSUS or its legislative history, the term is given its common meaning, which is presumed to be the same as its commercial meaning." *Intercontinental Marble Corp. v. United States*, 381 F.3d 1169, 1173 (Fed. Cir. 2004) (citing *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356 (Fed. Cir. 2001); *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)).  "To ascertain the common meaning of a term, a court may consult dictionaries, scientific authorities, and other reliable information sources and lexicographic and other materials."  *Id*. (internal quotation marks omitted).


     Here, both parties cite various reference sources in support of their positions.  Plaintiff presents the following definitions of the term "rainwear":  "Clothing and accessories that are waterproofed or water-repellant," *Fairchild's Dictionary of Fashion* 301 (2d ed. 1998); and "waterproof or water-resistant clothing," *Merriam-Webster Online Dictionary.*[6]  Likewise, defendant presents the following definitions of the term

---

     [6]     *See* www.m-w.com/dictionary/rainwear.

"rainwear": "garments suited for wearing in rain," XIII *The*

*Oxford English Dictionary* 133 (quot. 1953) (2d ed. 1989); and

"waterproof or water-resistant clothing (as a raincoat) for bad

weather wear," *Webster's Third New International Dictionary of*

*the English Language*, 1877 (1993). In like manner, at the

evidentiary hearing held in this matter, the parties' experts

testified as to the definition of rainwear.[7] Plaintiff's witness

defined the term as "an article of clothing that is worn to

protect you against the elements - - of warmth[8] and keeping you

dry and . . . water-resistant." Tr. of Civ. Cause For Evid.

Hearing ("Tr.") at 19:12-14. Defendant's witness defined the

term as having the "primary function of protecting the wearer

from the rain." Tr. at 95:4-5. In other words, the parties are

in substantial agreement that "rainwear" means a garment that

keeps the wearer dry in the rain. The question then arises as to

---

[7]   On June 13, 2005, prior to the evidentiary hearing, this court ordered the parties to submit letter briefs addressing, among other things, whether the term "rainwear" had a common or commercial meaning within the trade. *See* Order of 6/13/05. Neither party claimed that "rainwear" had any special meaning within the garment trade. *See* Pl.'s Letter of 6/24/05 at 2 (arguing that "the common meaning of rainwear does not include any of the limitations posited by Customs . . . ."); *see also* Def.'s Letter of 6/24/05 at 1 (contending that, despite not having a special meaning, the common meaning of the term should be limited).

[8]   It is worth noting that, at various times, plaintiff seeks to introduce the notion that rainwear is worn not only to ward off the rain, but also to keep the wearer warm. *See*, *e.g.*, Pl.'s Opp'n at 17 ("purchasers use [the] merchandise to stay dry and *warm* in inclement weather.") (emphasis added).

whether all garments that are waterproof or water-resistant and,
therefore, provide some protection from the rain, are rainwear in
their principal use.


          B.    Principal Use of the Subject Merchandise

     As previously noted, the principal use of an article is that
"use . . . which exceeds all others."  *Sports Graphics, Inc. v.
United States*, 24 F.3d 1390, 1394 (Fed. Cir. 1994); *see also
Lenox Collections*, 20 CIT at 196; *Automatic Plastic Molding, Inc.
v. United States*, 26 CIT 1201, 1205 (2002) (not published in the
Federal Supplement); *Int'l Custom Prods., Inc. v. United States*,
29 CIT __, __, 374 F. Supp. 2d 1311, 1332 (2005).  This court
customarily employs the several factors first referenced in
*United States v. Carborundum Co.*, 536 F.2d 373, 377 (C.C.P.A.
1976) ("*Carborundum* Factors"), to decide whether an article is
included in a particular class or kind of merchandise.
Specifically,

> Factors which have been considered by courts to be
> pertinent in determining whether imported merchandise
> falls within a particular class or kind include [1] the
> general characteristics of the merchandise, [2] the
> expectation of the ultimate purchasers, [3] the
> channels, class or kind of trade in which the
> merchandise moves, [4] the environment of the sale, [5]
> the use, if any, in the same manner as merchandise
> which defines the class, [6] the economic practicality
> of so using the import, and [7] the recognition in the
> trade of this use.

*Carborundum*, 536 F.2d at 377 (internal citations omitted); *see*

*also Bousa, Inc. v. United States*, 25 CIT 386, 389 (2001) (not reported in the Federal Supplement); *Simon Mktg., Inc. v. United States*, 29 CIT __, __, 395 F. Supp. 2d 1280, 1289 (2005).

1.  General Characteristics of the Merchandise

Plaintiff argues that its jackets have the characteristics of a garment that would keep the wearer warm and dry in inclement weather.  To that end, plaintiff describes the merchandise as

> below-waist-length "stadium" rainwear jackets, which feature the logos  and colors of National Football League (NFL), National Basketball Association (NBA), Collegiate Licensing and Major League Baseball (MLB) teams.  The outer shell of each jacket is constructed of a thick layer of polyvinyl chloride (PVC) plastic bonded to a tricot knit "scrim" fabric, which is composed 65% by weight of polyester and 35% of cotton. The jacket features a full front heavy zipper with long sleeves and elasticized cuffs.  The collar is folded down and the bottom of the jacket features an elasticized waist. . . .  The jackets are designed to be worn out of doors, in rainy or inclement weather. For example, they might be worn to football games or other sporting events (hence the name "stadium" jackets).

Pl.'s Opp'n at 2-3.  For plaintiff, these physical characteristics place its jackets in the rainwear class or kind of garment.  "[T]he subject merchandise is used in the same manner which defines the rainwear class.  Like rubber slickers, the subject pleather jackets are intended to be used in the rain or snow to prevent rain from reaching the wearer."  Pl.'s Opp'n at 17-18.

Court No. 02-00101                                              Page 13

    Customs disputes plaintiff's assessment of the subject

merchandise's physical characteristics.  Specifically, Customs

argues that

        common experience has taught us that many outerwear
        garments which are primarily used or intended to be
        used for warmth and/or fashion may also have some
        water-repellant qualities.  But those qualities alone
        do not qualify an article of clothing as belonging to
        the class or kind of merchandise known as rainwear.
        Rather, the principal purpose of rainwear is to keep
        the wearer dry in the rain.  The primary function of
        [plaintiff's] PVC jacket is as [a] substitute
        leather . . . varsity jacket, rather than functioning
        primarily as rainwear.

Def.'s Mem. at 1 (emphasis omitted).  Customs bases this

assertion on its observation that the jackets at issue "do not

have any underarm vents, back vents, or chest vents . . . are

'waist' length . . . .  The outside pockets . . . do not have

flaps, buttons, zippers or velcro fasteners . . . [and] there is

no fabric flap covering the zipper . . . ."[9]  Def.'s Mem. at 2-3.

Customs maintains that although the jackets may be waterproof or

water-resistant, the absence of these features prevents the

merchandise from effectively keeping the wearer dry in the manner

that would allow their principal use to be as rainwear.  That is,

without these features, the jackets cannot have as their "use

that exceeds all others" the protection of the wearer from the

_____

        [9]   Plaintiff agrees that the subject merchandise lacks the
above mentioned features; however, plaintiff disagrees that the
presence or absence of those features is determinative of whether
the subject merchandise can be properly classified as rainwear.
*See generally* Pl.'s Opp'n at 14-18.

rain.

Based on the undisputed facts and the court's own examination of plaintiff's jackets, it is apparent that they lack the characteristics of garments whose principal use is as rainwear.  First, the jackets fail to protect the lower half of the body from getting wet in the rain.[10]  Indeed, the jackets are designed with an elasticized waistband over which the jacket blouses, which, as this court observed when a jacket was worn in open court, tends to make the jacket ride up to the waist.  As a result, the wearer's buttocks and legs would be subject to the soaking effects of rain.  *See* Tr. at 103:22-24.  Further, the scrim tricot fiber material that lines the jackets is intended to provide warmth, *see* Tr. at 28:11-13; Tr. at 109:19, an unnecessary feature of a garment principally designed to keep the wearer dry in the rain irrespective of the outside temperature.  Rather, this feature is typical of a jacket whose purpose is to provide warmth whether it is raining or not.  *See* Def.'s Resp. to Pl.'s Facts at 2; Tr. at 108:10-13.  Here, the subject merchandise is constructed of non-breathable PVC material with no means of ventilation.  *See* Tr. at 49:17-19.  The absence of any

---

[10]     As the Federal Circuit has noted, "the merchandise itself is often a potent witness in classification cases."  *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989).

ventilation, such as grommets or breathable fabric,[11] along with the scrim tricot lining, will cause the wearer to perspire if the jacket is worn in the rain for any length of time.  *See* Tr. at 108:15-16, 20-21 (explaining, through testimony of defendant's expert, that some type of ventilation is needed for "comfort and wearability"); *see also id*. at 55:1-9, 10-13 (admitting, through the testimony of plaintiff's expert, that vents might help to carry away perspiration).  Thus, the general characteristics of the jackets indicate that they are not of the class or kind of merchandise whose principal use is as rainwear.

2.    Expectations of the Ultimate Consumer

The second of the *Carborundum* Factors, the expectations of the ultimate consumer, does little to support plaintiff's position.  According to defendant, it is difficult to see how a consumer can expect plaintiff's jackets to be used as rainwear when the "primary function . . . is as a substitute leather ("pleather") varsity jacket . . . ."  Def.'s Mem. at 1.  Indeed, plaintiff's own expert repeatedly referred to the subject merchandise as a "stadium jacket," not as rainwear.  *See* Tr. at

---

[11]    The experts for both parties testified that the PVC material that constitutes the subject merchandise is not breathable, while at the same time acknowledged that breathable fabrics, such as Gortex or Microfiber, are often used to construct garments that are intended to be worn in the rain.  *See* Tr. at 48-49, 107:15-17.

44:5-7.  Specifically, plaintiff's expert stated that the subject merchandise was "an all-purpose garment that could be used for [both] rainwear and activewear."  *Id*.  Plaintiff's expert further asserted that the type of individual who would purchase the subject merchandise is "someone that wants to be noticed . . . to be with their peers and . . . wants to feel part of the whole sports thing."  *Id*. at 37:11-13.  Such evidence leads the court to conclude that a purchaser would not primarily buy the subject merchandise for protection from the rain, but instead would purchase the jacket for wear in any cool weather conditions. Thus, the expectations of the ultimate purchaser provide support for Customs' classification.

### 3.  Channels of Trade

Third among the *Carborundum* Factors is the channels of trade in which the merchandise moves.  In arguing that their jackets move in the same channels of trade as merchandise included in the class or kind of rainwear, plaintiff claims that "the licensing agreements and sales sheets [for the production and sale of the merchandise] show that the merchandise moves in particular sales environments and channels of trade belonging to rainwear and is recognized in the trade as rainwear."  Pl.'s Opp'n at 18.  An examination of these documents, however, reveals that they provide, at best, equivocal evidence for plaintiff.  While the

sales sheets (some of which appear to be with a related manufacturer) refer to the merchandise as rainwear, the licensing agreements do not.  For instance, the licensing agreement with NBA Properties, Inc. refers to "Adult sized synthetic leather jackets for mass retail distribution only," *see* Letter from NBA to William Baum of 9/3/1998 at 2, and that of The Collegiate Licensing Company to "Water Repellant PVC Jacket (Pleather)," *see* The Collegiate Licensing Company Specification Sheet at 1.  Thus, the documents plaintiff cite as support for its proposed classification are of little use for that purpose.

### 4.  Environment of Sale

The fourth *Carborundum* Factor is the environment in which the merchandise is sold.  Despite plaintiff's contention in its brief that "the merchandise moves in particular sales environments . . . as rainwear," Pl.'s Opp'n at 18, nothing indicates that the subject merchandise was ever specifically promoted, advertised, or sold as rainwear.  To the contrary, as plaintiff's expert testified and Customs' expert agreed, given the "mass-market" character of the subject merchandise, the stores that would ultimately purchase the jackets for retail and in which the jackets would be sold, i.e., Sears, Wal-Mart, or Target, "don't . . . have specific departments that say rainwear . . .," Tr. at 33:16–19 (testimony of plaintiff's

expert), and "[the purchaser] almost ha[s] to do the shopping [herself] in those kind of stores."  *Id*. at 47:4-5; *see also* Tr. at 113:9-12, 20-25 (concurring testimony of defendant's expert). Thus, it appears that the environment of sale does not aid plaintiff.

5.   Use, Economic Practicality, Recognition in the Trade

The remaining *Carborundum* Factors, (a) use of the subject merchandise in the same manner as merchandise which defines the class; (b) the economic practicality of so using the import; and (c) the recognition in the trade of this use, merit brief examination.  First, while there was no direct evidence of the jackets being actually used to prevent the wearer from getting wet, there is no dispute that the jackets are waterproof or water-resistant.  Thus, nothing would preclude the jackets from having some utility as protection if worn in the rain.  That is, while they may not afford the more complete protection of other garments, the court finds that one of the uses of the jackets could be to provide the wearer some protection from the rain. Next, while there was no direct evidence of the economic practicality of using the jackets as rainwear, at an imported price of under $10 per jacket, there would appear to be little economic impediment to the jackets being purchased by many consumers.  Finally, there is no evidence on the record

indicating that the jackets would be recognized in the trade as rainwear.  Both experts consistently referred to the jackets as something other, i.e., "stadium jackets," Tr. at 118:5-15, "varsity jackets," *id*., and "outerwear jackets," *id*. at 45:12-13, 115:13-14.  Indeed, plaintiff's expert stated that the jackets would not be found in a "rainwear" section because the stores simply "[do not] really have specific departments that say rainwear anymore."  Tr. at 33:23-24.  Thus, to the extent that evidence is on the record, it does not support a finding that the jackets are recognized in the trade as rainwear.

Having applied the *Carborundum* Factors to the subject merchandise, it is apparent they do not indicate that the jackets' "use which exceeds any other *single* use" is to keep the wearer dry.  Thus, the jackets are not principally rainwear. Chief among the reasons for this conclusion is that the general physical characteristics of the jackets are not in accord with their principal use being rainwear.  In addition, the remainder of the *Carborundum* Factors would not compel a different conclusion.  As a result, the court rejects plaintiff's proposed classification.  This being the case, the court finds that the defendant has demonstrated that the proper classification[12] of

---

[12]    In a classification case, this court is "required to decide the correctness not only of the importer's proposed

(continued...)

the merchandise is the basket provision under HTSUS subheading

3926.20.90, "Other articles of plastics and articles of other

materials of headings 3901 to 3914: . . . Articles of apparel and

clothing accessories (including gloves, mittens and mitts): . . .

Other . . . ."


CONCLUSION

Therefore, the court denies plaintiff's motion for summary

judgment, grants the Government's cross-motion for summary

judgment, and dismisses this case.  Judgment shall be entered

accordingly.


                                        /s/ Richard K. Eaton
                                       Richard K. Eaton


Dated:    January 3, 2006
          New York, New York

---

[12](...continued)
classification but of the government's classification as well."
*Jarvis Clark Co. v. United States*, 733 F.2d 873, 874 (Fed. Cir.
1984).  Indeed, this court "must consider whether the
government's classification is correct, both independently and in
comparison with the importer's alternative."  *Id*. at 878.